**In the Matter of J.N.M., S.T.M., female children under the age of eighteen (18) years; and W.J.M., a male child under the age of eighteen (18) years.**

No. 51761.

Supreme Court of Oklahoma.

Dec. 14, 1982.

Michael W. Mitchel, Annis & Mitchel, Woodward, for appellant Deanna L. Miller.

L. Jack Barton, Dist. Atty., John F. Reichenberger, Asst. Dist. Atty., Woodward, for the State.

SIMMS, Justice:

Appellants seek to have the order permanently terminating their parental rights to their three children, JNM, STM, and WJM, reversed and remanded. The appeal raises numerous issues regarding the constitutionality of 10 O.S.1981, § 1130; however, because we reverse on the ground of insufficient evidence, we do not need to reach the constitutional questions raised.

The essence of the chronology of events leading to the order terminating the appellant's parental rights is as follows: the District Court of Woodward County directed the Department of Institutions, Social and Rehabilitive Services [hereafter DISRS][1] to conduct an investigation of the home conditions of the appellants, an emergency was found to exist and the court ordered the children placed in the temporary custody of DISRS. The sheriff of Woodward County filed a verified petition alleging in part that "the natural father ... and the natural mother ... are mentally incompetent and are both under treatment at this time for mental disorders and therefore, because of the mental incapabilities of both natural parents, the above three (3) children do not have the proper parental care or guardianship."

At the hearing on the petition the children were declared dependent and neglected, "for the reasons that they do not have the proper parental care or guardianship by reason of the fact that the natural father ... and the natural mother ... are mentally incompetent and are both under treatment at this time for mental disorders." [Journal Entry]

Ultimately the State of Oklahoma filed a verified motion to terminate parental rights "for the reason of the parents mental inca-

Jim Harkins, Holcomb, Holcomb & Harkins, Buffalo, for appellant Edmund C. Miller.

[1] Now known as Department of Human Services, 56 O.S.Supp.1980, § 162.1.

pabilities, that the children do not have the proper parental care or guardianship, and that the home of the aforesaid children is an unfit place for them to live." At the termination proceeding held two years after the children came to the court's attention, the court found (1) that the parents had not corrected the conditions that led to the adjudication of the children as dependent and neglected; (2) that the statutory period allowed for such corrections had expired; (3) that it was in the best interests of the children that the parental rights be terminated.

Appellant's major challenge to the order terminating parental rights is to the lower court's treatment of their mental illness as grounds for termination under 10 O.S.Supp. 1977, § 1130. While conceding that their mental illness caused conditions that justified the court's placement of their children in temporary custody of DISRS, appellants urge that mental illness alone is not a ground for permanent termination of parental rights under § 1130.

 The court's termination order was based on its reading of 10 O.S.Supp.1977, § 1130[2] to include mental illness as a ground for terminating parental rights, a reading which is arguably justified because of the lack of specificity in the termination statutes. 10 O.S.Supp.1977, § 1130, which is unchanged in 10 O.S.1981, § 1130, authorizes termination of parental rights under the following findings relevant to this action:

"3. A finding that the child is deprived, as defined in this chapter, and that such condition is caused by or contributed to by acts or omissions of his parent and that termination of parental rights is in the best interests of the child, and that the parent has failed to show that the condition which led to the making of said finding has not been corrected although the parent has been given three (3)

months to correct the condition; provided, that the parent shall be given notice of any hearing to determine if the condition has been corrected; provided further, that the court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the court, such extension of time would be in the best interest of the child. During the period that the parent has to correct the condition the court may return the child to the custody of its parent or guardian, subject to any conditions which it may wish to impose or the court may place the child with an individual or an agency; ..."

A deprived child is defined in 10 O.S. Supp.1977, § 1101(d):

"(d) The term 'deprived child' means a child who is for any reason destitute, homeless or abandoned; or who has not the proper parental care or guardianship; or whose home, by reason of neglect, cruelty, or depravity on the part of his parents, guardian or other person in whose care it may be, is an unfit place for such child; or who is in need of special care and treatment because of his physical or mental condition, and his parents, guardian or legal custodian is unable or wilfully fails to provide it; or whose parent or legal custodian for good cause desires to be relieved of his custody. Provided, however, no child who, in good faith, is being provided with treatment and care by spiritual means alone in accordance with the tenets and practice of a recognized church or religious denomination by a duly accredited practitioner thereof shall, for that reason alone, be considered a deprived child under any provision of this act. Where used in this chapter, the phrase 'dependent and neglected' shall be deemed to mean 'deprived.'"

Our statute does not provide for the situation of mentally ill parents. Even allowing

**2.** The adjudication of the child as dependent and neglected took place before § 1130 was amended in 1977. The petition alleged Supp. 1976, § 1130 A(3)(a), as the ground for the adjudication: "A finding that a parent who is entitled to the custody of the child ... has failed to give the child the parental care and protection necessary for his physical or mental health...."

a broad and flexible reading of the statutory language, we agree with appellants that the parents' mental illness alone is not a ground for permanent termination of parental rights under our statute. Were it construed as such, the statute would be unable to withstand a constitutional attack on the basis of vagueness.[3] It would make the discretion vested in judges so broad that arbitrary and discriminatory parental terminations would be inevitable.

It is a great misfortune that our termination of parental rights statute does not explicitly address itself to the situation of mentally ill parents. The legislatures of other states have included detailed provisions in their termination statutes. See discussions of such statutes in *Matter of Swartzfager*, 290 Or. 799, 626 P.2d 882 (1981); *In Interest of DLH.*, 198 Neb. 444, 253 N.W.2d 283 (1977); *In re David B.*, 91 Cal.App.3d 184, 154 Cal.Rptr. 63 (1979).[4]

Evidence of the existence of mental illness, without more, is inadequate to order a permanent termination of parental rights. As we stated in *Matter of Sherol*, Okl., 581 P.2d 884 (1979):

"It is true that in recent months this Court has been divided on many aspects of our involuntary termination procedure. There is, however, one important point upon which we all agree: The purpose of termination is to protect children from HARM suffered by reason of either neglect or the intentional actions of their parents. Termination is not a means by which the State of Oklahoma, through its juvenile courts and the Department, can exact conformity from its citizen-parents through the imposition of an 'acceptable' common value system and 'lifestyle'. There is no authority in our Juvenile Code which allows the State to interfere with family relationships where *harm* to children is not involved. This is, of course, a notion of constitutional dimension. The fundamental integrity of the family unit, which has found protection in the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Ninth Amendment, is subject to intrusion and dismemberment by the State only where a 'compelling' State interest arises and protecting the child from *harm* is the requisite State interest. [citations omitted]." P. 888.

This standard has not been met by the evidence presented by the state.[5] The mental illness of the two parents was not explained in other than a perfunctory manner; the significance of the diagnosis of paranoid schizophrenic was never examined; the *effect* of the parents' illnesses on the emotional and physical wellbeing of the children was never explained in any detail; no evidence as to a prognosis was offered nor was any evidence of the likelihood of successful treatment. The trial court was given no evidence as to whether these parents were likely to be mentally ill for their entire lives or if some treatment offered the probability of only short term incapaci-

---

3. See *Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)* and *Davis v. Smith, 266 Ark. 112, 583 S.W.2d 37 (1979)* for comprehensive discussions of unconstitutional vagueness in statutes.

4. An example is California's Civil Code, Ch. 4, § 232, which provides as one of the grounds for "declaring a person free from parental custody and control":

"(6) PERSONS WHOSE PARENTS INCAPABLE OF SUPPORTING OR CONTROLLING CHILD DUE TO MENTAL DEFICIENCY OR ILLNESS.
"(6) Whose parent or parents are, and will remain incapable of supporting or controlling the child in a proper manner because of mental deficiency or mental illness, if there is testimony to this effect from two physicians and surgeons each of * * * *whom* must have been certified either by the American Board of Psychiatry and Neurology or under Section 6750 of the Welfare and Institutions Code *or licensed psychologists who have a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders."

5. See *Matter of Baby Girl Williams*, Okl., 602 P.2d 1036 (1979) for further analysis of the risk of harm standard. It held that mere confinement in a mental hospital did not constitute failure to give a child the necessary parental care or protection required for his mental or physical health within the purview of the termination statute.

ty. In short, the mere label of mental illness was allowed to replace an adequate investigation into the effect of the behavior of these particular parents on these particular children,[6] and the length of time these parents would probably be incapacitated. The fundamental nature of parental rights to their children demands that attention be shifted from attaching a label to the parent to a showing of how that condition affects the fitness of the parent, the manner in which the condition is detrimental to the child,[7] and the likelihood of correction or control of the condition so that a parent would again be capable and fit to care for his children.

■ The evidence presented at the adjudicatory hearing consisted of certificates of the Sanity Commission and reports which provided little information other than diagnosis. Certificates of sanity, provided for in 43A O.S.Supp.1974 § 54 (now 55.2), have limited significance. Simply because the certificate allows for confinement in an institution does not mean it serves the purpose of proving the requisite evidence in a termination of parental rights proceeding. The State's claim that it had met its burden by showing that the parents "have been legally declared to be mentally ill" is a misstatement of the legal significance of the Certificate of Sanity.[8]

It may be that the illness of these parents is of such a long term nature and has such a pathological affect on the children that termination is justified under a statutory ground and required under the risk of harm standard. The record of the termination proceeding, however, does not show by the requisite quantum of evidence[9] that the mental illness of the parents posed actual or imminent harm to the children; it only shows that the parents were mentally ill under 43A. Substantive due process forbids termination of such fundamental rights in the absence of a demonstration of a compelling state interest in the form of specific findings of existing or threatened harm to the child.[10]

■ In the case at bar, where the parents are mentally ill,[11] and the state wishes to terminate under one of the grounds enumerated under our statutes (quoted above), it must, as in all other cases, show imminent or actual harm to the children. We note that other jurisdictions, those having a provision in their termination of parental rights statutes for mentally ill parents, have allowed termination without a showing of *actual* harm to the child if the following two pronged test is met:

(1) that the mental deficiency or illness is settled in that it will continue for an indefinite period of time in the future regardless of medical treatment available to the parent;

(2) that the severance of the relationship is the least detrimental alternative available to protect the welfare of the child. See e.g., *In re David B.,* 91 Cal.App.3d 184, 154 Cal.Rptr. 63 (1979).

---

6. See *In re Kidd, Minn.,* 261 N.W.2d 833, 835: "... we wish to state unequivocally that mental illness in and of itself shall not be classified as 'other conduct' which will permit termination of parental rights. Rather, in each case, the actual conduct of the parent is to be evaluated to determine his or her fitness to maintain the parental relationship with the child in question so as to not be detrimental to the child." See also, *In re E & B, (Utah 1978) 578 P.2d 831, 833–34; In re Telles, (1978) 87 Cal.App.3d 864, 151 Cal.Rptr. 263, 266–267; Matter of Fish (1977), 174 Mont. 201, 569 P.2d 924, 926, 34 St.Rep. 1080, 1083–84.*

7. See Developments in the Law: The Constitution and the Family, 93 Harv.L.Rev. 1187 (1979).

8. See *Maas v. Phillips, 10 Okl. 302, 61 P. 1057 (1900); Ex Parte Gilbert, 71 Okl.Cr. 268, 111 P.2d 205 (1941); Kirk v. McClendon, 94 Okl. 33, 220 P. 949 (1924).*

9. *In re Darren Todd H., Okl.,* 615 P.2d 287 (1980) adopted the clear and convincing standard of proof in termination of parental rights proceedings.

10. *Matter of Sherol, supra; Alsager v. Dist. Ct. of Polk City, Iowa, 406 F.Supp. 10 (1975).*

11. The court presumably relied on the definition of mentally ill under 43A O.S.1971 § 3(c); at this time our statutes provide no specific definition for the purposes of terminating parental rights.

Additionally, we note that if other conditions existed that required correction by the parents, an indication that the adjudication of deprived and the order of termination were based on other factors than the parents' mental illness, e.g., health endangering home conditions, none were listed in the orders or indicated with sufficient evidence in the record.

■ In fact, it was only in the order of termination that a hint of a possible other ground for termination could be detected: "that the home of the aforesaid children is an unfit place for them to live." Significantly, no mention of this alternate ground was made in the Journal Entry of adjudication. Because mental illness alone is not a ground under the statute, the parents were not given notice of any other grounds for termination between initial adjudication and the termination stage which *could* have been corrected. Recently we have stressed the importance of notice of conditions in *Matter of C.G.,* Okl., 637 P.2d 66 (1981). But even earlier, in *Matter of J.F.C.,* Okl., 577 P.2d 1300 (1978), we required that parents be notified of standards which had to be met or corrections made in order to prevent termination of parental rights:

> "To sustain the pleading to terminate trial court must apply the standards of conduct which emerge from the adjudicatory stage. To be affirmed on appeal, the record, likewise, must show this Court what those standards were.

> "After examining the record we can find no pleading, or evidence from which we can ascertain what standard evolved from the prior adjudication upon which a standard of conduct could have been set for the present termination of appellant's parental rights." [p. 1303]

Because a mere showing of the parents' mental illness is not a ground for terminating parental rights under § 1130, we hold that the trial court order terminating appellants' rights must be reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion. The existing custody orders entered by the trial court are unaffected by this opinion and remain in full force and effect.

REVERSED AND REMANDED WITH DIRECTIONS.

IRWIN, C.J., BARNES, V.C.J., and DOOLIN, HARGRAVE, and OPALA, JJ., concur.

WILSON, J., concurs in part, dissents in part.