695 P.2d 556 (1985)
In the Matter of the ADOPTION OF Jeremy Levi BLEVINS, A Minor Child.
Arthur Lee BLEVINS, Appellant,
v.
Gary Joseph THOMAS and Brenda Gail Thomas, Appellees.
No. 60042.
Court of Appeals of Oklahoma, Division No. 1.
August 28, 1984.
Rehearing Denied October 23, 1984.
Certiorari Denied February 12, 1985.
Released for Publication February 15, 1985.
David G. Trojan, Enid, for appellant.
Norman A. Lamb, Enid, for appellees.
Released for Publication by Order of the Court of Appeals February 15, 1985.
*558 ROBINSON, Judge.
This action comes on for review of a proceeding below in which the trial court ordered Jeremy Levi Blevins, a minor child, eligible for adoption without the consent of his natural father, appellant, Arthur Lee Blevins, (Father). Appellees Brenda Gail Thomas (Mother) and Gary Joseph Thomas, Mother's present husband, petitioned the court for the above order under 10 O.S. 1981 § 60.6 (Consent of parents  Exceptions) Subsection 3:
A legitimate child cannot be adopted without the consent of its parents, if living, nor a child born out of wedlock without the consent of its mother, if living, except that consent is not necessary from a father or mother:
1... .
2... .
3. Who, for a period of twelve (12) months next preceeding the filing of a petition for adoption of a child, has wilfully failed, refused or neglected to contribute to the support of such child:
a. in substantial compliance with a support provision contained in a decree of divorce...
By the terms of the divorce decree, an adjudicated amount of child support ($200.00) was to be sent each month by Father to the district court clerk for the use and benefit of Jeremy Levi Blevins. The parties were divorced August 12, 1980, and the support payments were to begin September 1, 1980; the Application for Adoption Without Consent was filed January 7, 1983. At trial, E'loise DeVinney, District Court Clerk of Garfield County, testified that according to her records a $100 payment was made by Father on December 14, 1981, but that no further payments were received by her office until March 17, 1983 which was in the amount of $20.00.

I.
Notwithstanding the testimony of the district court clerk, Father contends the evidence with respect to his wilfull failure, refusal or neglect to contribute to the support of the minor child was insufficient under the clear and convincing standard required in such proceedings. We disagree.
Fundamentally, the issue of wilfullness is properly a question for the trial court. In the Matter of the Adoption of Darren Todd H., 615 P.2d 287 (Okl. 1980); DeGolyer v. Chesney, 527 P.2d 844 (Okl. 1974). We find ample evidence in the record to sustain the judges' finding with respect to wilfullness. Father contends he was financially unable to contribute to support as required in the original divorce decree. The record reflects that Father purchased a home subsequent to his divorce from Mother, remarried and maintained a household of two children by the subsequent marriage. Father testified he received approximately $4,000.00 per month from a sales job with the firm of Smith International. He testified that shortly after his divorce he became unemployed with this firm. He stated that after an unemployment period, around six to eight months, he was employed by Real E-Z Pipe Company. He stated he worked there for five months. However, Father stated he "was not making enough money and I couldn't live off of that so I had to quit." Father stated he remained unemployed for another six to eight months when he became employed with the FastWay Pipe Company. Father could not recall what his salary was with any of these firms, except for the $4,000.00 per month made with Smith International, and refused to give even an approximate salary range. He did state that he received unemployment compensation for one month but refused to continue to seek entitlement under that program because he did "not believe in unemployment compensation". Father's testimony is also spotty with regard to the original purchase price of the home he and his new wife bought in October of 1980. Still further, he could not recall either his monthly mortgage payments nor whether he had paid a down payment for the home, although he recalled it was financed by Frontier Federal as a conventional loan.
*559 Notwithstanding the fact that there were periods of unemployment by Father, we have little hesitancy in determining under the clear and convincing standard that the trial court is sustained in its finding that Father wilfully failed, refused or neglected to substantially comply with the court's order of child support. In addition to the above evidence Father further admitted that he fed, supported and maintained his two children by his current wife, and that his current wife did not work. The absolute absence of any payment voucher being forwarded by Father to the clerk of the court as required in the adjudicated child support order for a period of 15 months supports the trial judge in his determination on the issue of wilfullness.
Father next contends that he had alternate arrangements with Mother with respect to meeting his child support obligation. He first contends that his assumption of a $300.00 Mastercharge debt, ordered by the trial court to be paid by Mother, was in lieu of payment of child support. We note the trial judge, in his Journal Entry of Judgment, specifically stated that even if he was to believe the evidence of Father in this regard, that $300.00 was not substantial compliance with the court's adjudicated child support order. The evidence was that no payment voucher had been received between December 14, 1980 and March, 1983 when a payment of $20.00 was received. Hence, during a 15 month period $3,000.00 was to be received in child support from Father, but only $20.00 was actually received by the court clerk. We agree with the trial judge that even if Father has indeed paid the $300.00 Mastercharge debt of Mother (which was not proven) that it would not be substantial compliance with the statute.
Father contends that he had another agreement with Mother whereby he would set up a trust fund in Jeremy Levi Blevins favor and pay the sums directly into the trust which would be in lieu of, and in satisfaction of, all child support obligations. Contrary to Father's statement in his brief, the evidence was indeed controverted as to whether an agreement was reached. Mother testified that Father approached her with the idea and that he stated that he would speak with his lawyer and get back to her on it and that she heard nothing else. Father states that he told Mother that he would set up the fund and that indeed he had set up a special trust fund in favor of his son. Father then produced a saving's book, with the named beneficiaries of the account being himself, his current wife and Jeremy Levi Blevins. The passbook indicated there was $200.00 in the account with a deposit date showing September 22, 1982. Mother testified that she understood that if a trust was to be established it would be approved by the court. No such approval was attained. A saving's account of the type produced by Father is not an exclusive and irrevocable trust in son's name. Father admitted that either he, his wife or Jeremy could withdraw funds from the account. Hence, the funds were not for the exclusive use nor in the exclusive control of Jeremy Levi Blevins. Still further, Mother testified that neither she or Jeremy had ever been informed that any so-called trust, or savings account, had been established. In light of the record with respect to the alleged trust, albeit a savings account, we find the evidence insufficient to show Father in substantial compliance with the court's order.

II.
Father next contends that § 60.6(3) is unconstitutional as violative of his substantive due process rights and his right to equal protection under the laws. Specifically, Father contends that there are less restrictive means for providing for the support of children that do not interfere with the fundamental right of a parent-child relationship.
It is fundamental in Oklahoma that "the right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the Federal and State Constitutions". In the Matter of the Adoption of Darren Todd H., 615 P.2d 287, 290 (Okl. *560 1980); See e.g., J.V. v. State Department of Institutions, Soc. and Rehab. Services, 572 P.2d 1283 (Okl. 1977). That right emanates from the constitutional right to privacy and before a parent may be deprived of that right he or she must be accorded the full panoply of procedural and substantive safeguards associated with constitutional protections of fundamental rights. Cf. Griswold v. Connecticutt, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Still further, the constitutional status of noncustodial parents to not be totally and permanently deprived from seeing their children is roughly comparable to that of parent and child in a viable nuclear family. Franz v. United States, 707 F.2d 582 (D.C. Cir.1983).
The courts will apply the tests of strict judicial scrutiny to a state law which interferes with the exercise of fundamental rights and liberties explicitly or implicity protected by the Constitution. San Antonio Independent School Dist. v. Rodrigues, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). In pursuing a substantial or compelling state interest, it is fundamental that a state cannot choose a means to reach its goal which unnecessarily burdens or restricts a constitutionally protected activity. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Hence, where state action impinges upon the exercise of a fundamental constitutional right or liberty, the courts will endeavor to determine whether the state has chosen the "least restrictive alternative". Rodrigues. However, the liberty interest in maintaining a familial relationship with one's child is indeed fundamental, it need not be observed at the expense of the best interests of the child. In re the Matter of M.A.M., 183 Mont. 434, 600 P.2d 203 (1979). Thus, in our examination of § 60.6(3), we must balance the liberty interest of Father with the state's compelling interests which assertedly justify the extreme intervention into the private realm of family life.
The critical aspect of § 60.6(3), reproduced earlier, and case law require a "clear and convincing" finding that a noncustodial parent charged with a support provision contained in a decree of divorce has "willfully failed, refused or neglected to contribute to the support of such child". In the Matter of Darren Todd H.. Hence, the underpinnings of § 60.6(3), as justification for adoption without parental consent, is "financial abandonment" by the non-custodial parent charged with financial support of a child, but who has wilfully failed, refused or neglected to contribute to the support of such child as ordered. As parens patriae, the state may limit the power of a parent over a child if it appears that parental decisions will jeopardize the health or safety of the child, or have potential for significant social burdens. Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).
In accordance with this principle, the state has a legitimate interest in enforcing financial support for children, even through criminal proceedings, Jones vs. Helms, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2nd 118 (1981)...
In re F.L.D., 464 A.2d 419 (Pa.Super. 1983).
Since the states may be sustained in enforcing financial support obligations of parents with respect to their children, the question is whether § 60.6(3) finds a correct balance in its provision permitting adoption without consent of a parent who has been found to wilfully fail, refuse or neglect to contribute to the support as ordered by the court. We think it does.
The Oklahoma Supreme Court sustained a substantive due process challenge to a statute permitting termination of parental rights, as applied, to a mentally ill parent "in the absence of a demonstration of a compelling state interest in the form of specific findings of existing or threaten harm to the child." Matter of J.N.M., 655 P.2d 1032 (Okl. 1982). However, in that case the litigant was not accorded either procedural or substantive due process with respect to the statute authorizing termination of their parental rights. In the matter of J.N.M., supra. In the present case, however, there is no question that the father was accorded his procedural due process *561 rights. Substantively, we find § 60.6(3) both facially and as applied to father constitutional, since its ultimate goal is to protect children from harm suffered by either neglect or the intentional actions of their parents, albeit financial abandonment. Cf. Matter of Sherol A.S., 581 P.2d 884 (Okl. 1978). The statute is drawn narrowly and the Supreme Court of Oklahoma's requirement that the evidence of wilfull failure to provide support must be "clear and convincing", In the Matter of Darren Todd H., buttresses the constitutionality of the statute. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (in parental rights termination proceeding private interest affected weighs heavily against use of preponderance of evidence standard). The statute, while intrusive, prevents the ills of protracted foster care, together with the child's right to continuous care in a stable, permanent home environment, which outweighs Father's liberty right to grant consent for adoption of his son.

III.
For the reasons stated we find the trial court may be sustained in its finding of wilfullness on the part of Father in his failure to provide support to his child as ordered by the court in the divorce decree. We find the statute in question, § 60.6(3) substantively constitutional, both facially and as applied to Father. We further find that Father has no standing to challenge the statute on equal protection grounds for the same reasons the Supreme Court of Oklahoma found the litigant lacked standing to assert an equal protection violation in In the Matter of the Adoption of Darren Todd H., 615 P.2d 287, 291. There the Court noted that any application of the statute in question in a manner that determined the continuation of parental rights by financial status alone would be constitutionally unacceptable. 615 P.2d at 291. However, the Court found appellant there had no standing to complain about the statute's application to a person financially unable to comply with an order of support as no evidence was presented to show that he was such a person. In the case at bar, there was evidence that father had worked at a job with a salary of approximately $4,000.00 per month up until the time of his divorce. Shortly after his divorce he bought a home and admits making the payments thereon. He admits that he is able to maintain a household for his non-working wife and their two children. He further tendered a check for some $1,200.00 at, or around, the time Mother and her present husband filed their Application for Adoption Without Consent. Father admitted working at numerous jobs and provided no evidence that he was unable to substantially comply with the support decree, and therefore, Father has not shown he is in the class of protected persons (indigents) of which he seeks to assert an equal protection violation challenge to the statute in question.
AFFIRMED.
YOUNG, P.J., and REYNOLDS, J., concur.