**In the Matter of the ADOPTION OF DARREN TODD H.**

No. 50795.

Supreme Court of Oklahoma.

July 29, 1980.

William J. Dale, Tulsa, for appellant.

James M. Springer, Jr., Stillwater, for appellees.

SIMMS, Justice:

This is an appeal by Dennis H., the natural father of Darren H., from an order of the trial court declaring Darren eligible for adoption by his stepfather, Charles L., without appellant's consent by reason of the court's finding that appellant had wilfully failed to pay child support for twelve months preceding the filing of the adoption petition.

The pertinent portion of 10 O.S.Supp. 1976, § 60.6[1] provides:

"A legitimate child cannot be adopted without the consent of its parents, if living, * * * except that consent is not necessary from a father or mother:

\* \* \* \* \* \*

3. Where a parent has wilfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce, * * * for a period of one (1) year next preceding the filing of a petition for adoption of such child; * * *"

Appellant and Darren's mother, Kay (now Kay L.), were divorced in July 1975. Darren's custody was awarded to his mother and appellant was ordered to pay $200.00 a month for his son's support.

In January of 1976, Kay married Charles L., her present husband. In January of 1977 they petitioned the district court for Darren's adoption, seeking to make Charles his legal father. As part of that proceeding they filed an application pursuant to § 60.7, for an order determining Darren eligible for adoption without his father's consent. They alleged that under § 60.6, the father's consent was unnecessary because he had "wilfully failed, refused, and neglected" to comply with the support provisions of the divorce decree.

Hearing on the application was held and appellant was present and represented by counsel. The trial court's order in favor of appellees, natural mother and her husband, is the basis of this appeal.

Appellant first asserts that the evidence did not show that he "wilfully" failed to pay child support within the intent of the statute. In support of his position he relies generally upon decisions which support two basic principles. First, that in adoption proceedings the party seeking to sever the parent-child relationship must bear the burden of proof to demonstrate why the non-consenting parent's consent is not required. Second, that where the custodial parent refuses to accept child support payments offered by the other parent and thereby induces the parent under a support order into foregoing further attempts to pay, the resulting failure is not "wilful" under our statute. We have recognized these principles as correct statements of the law,[2] but they do not aid appellant under these circumstances.

The natural mother and her husband did have the burden of proof and they proved their case. Their evidence showed that appellant had made only two child support payments since the divorce in July of 1975; one in September, 1975, and one in October, 1975. In spite of appellant's reliance in his brief on *In re Adoption of Gregory, supra,* that case is clearly distinguishable. In *Gregory* actual tenders of payments were consistently returned and genuine offers refused. The record shows without contradiction that here no payments were ever tendered and no genuine offers made.

Appellant's testimony, in its strongest light, indicates only that after their divorce, Kay did not affirmatively demand the support payments. Appellant's testimony was that Kay told him that he could put off paying until he "could afford" to comply and that after her marriage to Charles, she advised him they "didn't need" the money. In July of 1976, according to appellant, Kay advised him that if he could afford a new marriage, he could afford to establish a

1. All subsequent statutory references are to Title 10.

2. See, e.g., *In re Adoption of Graves,* Okl., 481 P.2d 136 (1971); *Adoption of Robin,* Okl., 571 P.2d 850 (1977); *Mann v. Garrette,* Okl., 556 P.2d 1003 (1976); *In re Adoption of Gregory,* Okl., 495 P.2d 1275 (1972).

trust fund for Darren's future and he should start such a fund. It was only after the adoption proceedings had commenced however, that appellant opened a bank account which, although solely in his name, he contended was ·intended for Darren's benefit. Appellant's testimony revealed that at the time of the divorce his monthly income was $1,600.00 His income later dropped to $600.00 a month when he moved to California, but had steadily and consistently increased. He began earning $1,500.00 a month in June, 1976, and that was his income at the time of these proceedings. From January through April of 1976 his income was $900.00 a month, and from April until June his income was $1,000.00 a month.

Appellant did not introduce anything to demonstrate that at any time during the twelve months in question he was ever incapacitated or unable for any other reason to comply with the order.

█ Appellant apparently wishes us to hold that his testimony to the effect his ex-wife had told him he could put off paying until he could better afford it, is sufficient to disprove the wilfulness required by § 60.6. It is not. Even without Kay's sharply conflicting testimony as to whether she "excused" his support obligations, appellant's own testimony does not reveal one "genuine offer" of support being refused. The facts are not sufficient to place this matter within the rule of *Gregory*. Mere inquiries regarding support are not enough. *Matter of Adoption of E.S.P.,* Okl., 584 P.2d 209 (1978).

█ The issue of wilfulness is a fact question for the trial court.[3] The evidence in this action clearly and convincingly supports the trial judge's determination that appellant's failure to pay was wilful within the intent of the statute to such an extent as to obviate the necessity of obtaining his consent to the adoption.

We apply the standard of "clear and convincing" proof advisedly. We have previously held the "weight of the evidence" standard sufficient to support an order declaring a child eligible for adoption without parental consent.[4] We are convinced however, that standard is not adequate and the clear and convincing standard is required. We take this opportunity to adopt that standard and its application will be prospectively required.

In so deciding, we are persuaded by the rationale of the Supreme Court of the United States in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), as it passed on the standard of proof necessary under the federal Due Process Clause for a civil commitment proceeding. The Court rejected the necessity and propriety of using the "reasonable doubt" standard of criminal prosecutions but likewise rejected the constitutional adequacy of a mere "preponderance" standard for a proceeding threatening individual liberty.

The Court first noted that the function of a standard of proof is to:

" '[I]nstruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." 441 U.S., at 423, 99 S.Ct., at 1808.

The Court observed that three standards of proof have, generally speaking, evolved for different types of cases. At one end of the spectrum the burden of a mere preponderance is used typically in monetary disputes between private parties where society's concern with the outcome is minimal and the parties share, more or less equally,

---

3. *DeGolyer v. Chesney,* Okl., 527 P.2d 844 (1974); *Matter of Adoption of E.S.P, supra.*

4. See, e.g., *Matter of Adoption of Michelle N.,* Okl., 577 P.2d 68 (1978); *Matter of Adoption of*

*E.S.P., supra; DeGolyer v. Chesney, supra; In re Adoption of Eddy,* Okl., 487 P.2d 1362 (1971).

the risk of error. At the other extreme is the traditional reasonable doubt standard of criminal cases which is designed to protect the fundamental rights of a defendant by minimizing the risk of error and placing the risk of error on society. The intermediate standard of "clear and convincing" proof is, the Court noted at 441 U.S. 431–432, 99 S.Ct. at 1812, no stranger to the civil law. It is imposed by many jurisdictions where the interests at stake are deemed more substantial than mere loss of money. In actions such as fraud, the plaintiff's burden is increased to decrease the risk of erroneously injuring the defendant's reputation. Similarly the intermediate standard is used to offer greater protection to particularly important individual rights, and the Court pointed out that the standard has been made applicable to naturalization and deportation cases.

Through a balancing test, weighing the significance of an individual's loss of liberty, by an erroneous commitment against the interests of the state, the Court concluded that the individual should not be asked to "share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." At 331, 332, 99 S.Ct. at 1810. The Court found therefore that because of the weight and gravity of the individual's interest in the outcome of a civil commitment proceeding, "due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence," (at 332, 99 S.Ct. at 1810), "[s]ince the preponderance standard creates the risk of increasing the number of individuals erroneously committed." At 331, 99 S.Ct. at 1809.

We agree with the Court that "adopting a 'standard of proof is more than an empty semantic exercise'" (citation omitted). For

"in cases involving individual rights, whether civil or criminal, 'the standard of proof [at a minimum] reflects the value society places on individual liberty' (citations omitted)". At 330, 99 S.Ct. at 1809.

Oklahoma is one of the jurisdictions which requires proof of fraud by a clear and convincing proof.[5] We require clear and convincing proof in civil commitment proceedings[6].

It is clear to us that the interests of a parent in and to his child which are placed in jeopardy by an action such as this are, at a minimum, of the same magnitude as those of a defendant in a fraud action or an individual in a civil commitment proceeding. It follows that parental rights must similarly be protected from the increased risk of an erroneous decision created by a mere preponderance or weight of the evidence test.

We have repeatedly recognized that the right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the federal and state constitutions. See e.g., *J. V. v. State, Dept. of Institutions, Soc. and Rehab. Services*, Okl., 572 P.2d 1283 (1977). The fundamental nature of parental rights "requires that the full panoply of procedural safeguards must be applied" before a parent may be deprived of that right. *Matter of Chad S.*, Okl., 580 P.2d 983, 985 (1978). Assessing this situation under the rationale of *Addington*, we are convinced that because a declaration of a child's eligibility for adoption without parental consent effects a termination of parental rights[7], the magnitude of the rights involved requires proof which is clear and convincing. We adopt that standard of proof prospectively and overrule previous holdings to the contrary.

---

5. See, e.g., *Clark v. Lockstone*, 170 Okl. 316, 39 P.2d 971 (1934); *Downtown Chevrolet Co. v. Niccum*, 180 Okl. 616, 71 P.2d 957 (1937); *Owens v. Musselman*, 190 Okl. 199, 121 P.2d 998 (1942). (Many of our decisions use various combinations of the words "clear", "convincing", "satisfactory", and "cogent".)

6. Our previous statutory standard of proof "beyond a reasonable doubt", 43 A, O.S.Supp. 1978, § 54.1(C) has been amended to "clear and convincing proof" by S.B. 633, 37th Leg. 2nd Sess., Section 3(J) (1980) (to be codified as 43A O.S.Supp.1980, § 54.4).

7. *Wade v. Brown*, Okl., 516 P.2d 526 (1973).

Appellant's equal protection claim must also fail. Appellant's argument is that under §§ 60.6 and 60.7, the rights of a parent to his or her child are determined by financial ability to pay and the parental rights of poor persons therefore receive less protection than is extended to the affluent. Any application of these statutes in a manner that determined the continuation of parental rights by financial status alone would obviously be constitutionally unacceptable. Appellant, however, has no standing to complain about the statute's application to a person financially unable to comply with an order of support as he presented no evidence to show that he was such a person. To the contrary, his evidence showed that during the pertinent twelve month period, he was at all times financially able to comply in full with his support obligation. The wilfulness requirement of the statute is intended to prevent an arbitrary application of the statute and a parent's inability to comply with a support order would always be relevant to show an absence of wilfulness. Having failed to bring himself within the boundaries of the affected class he attempts to create—poor parents—he has no standing to complain of such an application of §§ 60.6 and 60.7, and we will not pass on the question. *Dablemont v. State, Dept. of Public Safety*, Okl., 543 P.2d 563 (1975).

Appellant's third assignment of error is that the trial court erred in refusing to admit evidence that the adoption would not serve Darren's best interests. This proposition will not be considered as appellant neglects to point out the evidence claimed to have been improperly excluded. Such an assignment of error is too indefinite for consideration. *Fenstermacher v. Woodard*, 194 Okl. 449, 152 P.2d 385 (1944). Rules of the Supreme Court, 12 O.S.1971, Ch. 15, App. 1, Rule 15.

The order of the trial court is AFFIRMED.

LAVENDER, C. J., concurs in result.

WILLIAMS, BARNES, DOOLIN & OPALA, JJ., concur.

IRWIN, V. C. J., and HODGES, J., dissent.