823 P.2d 383 (1991)
In the Matter of the ADOPTION OF B.R.H., a minor.
Chris C. WADKINS and Janice L. Wadkins, Appellees,
v.
Bobbie L. HOLCOM, Appellant.
No. 73398.
Court of Appeals of Oklahoma, Division No. 2.
December 10, 1991.
Gary L. Mitchel, Mitchel, Gaston & Mitchel, Woodward, for appellees.
Gerald W. Thomas, Mooreland, Gary A. Taylor, Legal Aid of Western Oklahoma, Inc., Oklahoma City, for appellant.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 2.
*384 BRIGHTMIRE, Judge.
The dispositive question for review is whether the trial court  in passing on a stepfather's application to permit his petition for the adoption of his minor stepson, B.R.H., to go forward without the consent of the child's natural father  has jurisdiction to "terminate" the parental rights of the objecting father.
The trial court held it did have and entered an order terminating the father's parental rights.
We hold the court did not have such jurisdiction and vacate the order.

I
Chris Wadkins, stepfather of B.R.H., a minor son of respondent Bobbie L. Holcom, initiated this action by filing a petition asking for a decree of adoption of B.R.H. without the consent of the minor's natural father on the ground he "has failed to contribute to the support of the child for a period of twelve (12) months immediately preceding the filing of this petition." At the same time the petitioner filed a separate application for an order determining B.R.H. to be eligible for adoption without the consent of his father.
*385 The father employed counsel who filed an answer in the case. The application came on for hearing. The father experienced car trouble on the way to the hearing and was stranded in Kansas. The trial proceeded with only the father's counsel present.
The only evidence adduced by the petitioner was: (1) A divorce decree which had been entered ordering the father to pay "reasonable child support for the care and maintenance of said [unborn] child;" (2) a purported (unsigned, unfiled, and uncertified) order modifying the divorce decree which was alleged to have been entered sometime after the birth of B.R.H. obligating the father to pay $200 per month child support; and (3) the testimony of the natural mother that she had not received any child support from the father for the benefit of B.R.H. At the close of the evidence the trial court entered an order which made no predicatory findings of fact, but simply ordered that the father's parental rights be "terminated ... and that the petitioners [sic] herein proceed with the adoption of the minor child without the consent of any other person."[1]
The father appeals.

II
The order is void for two reasons.
First, it adjudicates an issue not raised by the pleadings, i.e., "termination" of the father's parental rights.[2] The only issue before the trial court for resolution at subject hearing was the one raised in the petitioner's application i.e., to permit the adoption proceedings to go forward without the consent of the father. Yet the only issue the court addressed in its pronouncement and order was one which did not exist  the termination of the father's parental rights. There were no predicatory or ultimate findings on the one issue raised by the pleadings. Hence the order ran afoul of the rule that any judgment based "on a matter unsubmitted for determination is a nullity." See Spears v. Preble, 661 P.2d 1337, 1343 (Okl. 1983). Moreover, there was no evidence which would have supported a termination if it had been raised.
The second reason is that such order is contrary to the public policy of this state in that, if permitted to stand, the child would legally be without a father at least until the court determined whether the adoption should be permitted, and if the adoption were to be eventually denied the child would remain fatherless indefinitely. See Merrell v. Merrell, 712 P.2d 35 (Okl. 1985).
And finally, our adoption statutes contemplate that even if the adoption were to proceed without the father's consent, he would retain standing to challenge the adoption by proving that the adoption is not in his child's best interest. Terminating the father's parental rights would operate to deprive him of that fundamental right.

III
With respect to the question of whether the evidence is sufficient to support a finding that the adoption should go forward without the consent of the natural father, it should be pointed out that the trial court made no findings of fact essential for granting the stepfather's application.
The record indicates that the natural father never graduated from high school and did not receive vocational or rehabilitative training. After quitting school in 1978, the father held a variety of manual labor jobs in Colorado, Kansas and Oklahoma. From 1983 until 1985 he was a patient in the Colorado State Hospital receiving treatment for a mental disorder. In 1986, he was admitted to "Grant House" because the "medication wasn't working like it was supposed to." Since then he has stayed out of the hospital and continues to take his medicine and see his regular physician. He stated that he has even tried to work *386 but just "can't handle real hard pressure" even while on medication administered three times daily.
The father admitted that he had not directly provided monetary support for B.R.H. He did state, however, that he once mailed his ex-wife one support payment of $250 but it was returned to him undelivered. It is conceded that the only support for the child has been the payment of social security dependent benefits made to the mother at the father's request.
Oklahoma law requires a noncustodial parent to support his child according to the terms of a court order or, absent such provisions, in a manner commensurate with his financial abilities. In re Adoption of C.M.G., 656 P.2d 262 (Okl. 1982). When the petitioner alleged that there was a court order imposing specific child support duties upon the father, the existence and validity of such an order became a mixed question of law and fact.
Permitting the mother to testify about the details of the phantom order was among the errors committed below. What happened was this: In an effort to lay a predicate for the introduction of an unsigned and unfiled document, one that purported to be a copy of an order modifying the divorce decree after the baby was born, the petitioner attempted to elicit details of the alleged modification order from the mother on the assumption that she had "personal knowledge" of its contents. Over the father's objection, the mother was allowed to testify concerning her "knowledge" of such purported order which is said to have been surreptitiously obtained by the mother in a district court other than the court having venue to hear the adoption petition.
The mother's testimony and the production of an unsigned and unauthenticated ex parte modification order drew contemporaneous objection at trial when the petitioner sought to introduce the terms of the order in derogation of the rules of evidence. The trial court overruled the objection. The father again challenged the impropriety of admitting this evidence in his brief-in-chief and by motion for leave to amend his petition in error. This clearly was a decisional error with regard to an "issue presented to and resolved by the trial court which is supported by the record" and fundamental justice requires that leave of court be granted to allow the appellant to amend the petition in error to consider Proposition I. Civil Appellate Procedure Rule 1.17, 12 O.S. 1981, ch. 15, app. 2.
Another problem presented by the facts is whether the Woods County divorce court even entered a valid decree of divorce between the natural mother and the natural father. The mother testified that at the time the divorce was filed, she and the father lived in Salina, Kansas. The statutory residency requirements are, of course, jurisdictional and establishment of a domicile for a statutory period of time is a prerequisite to the court's power to render a divorce. 43 O.S.Supp. 1990 § 102;[3]Meyers v. Meyers, 200 Okl. 683, 199 P.2d 819 (1948); Burnworth v. Burnworth, 572 P.2d 301 (Okl.App. 1977).
Notwithstanding the fact that the divorce court prematurely awarded custody of an unborn child to the mother in an ambiguous order requiring the father to pay "after the birth of said child ... reasonable child support," there is no evidence that the father ever received notice of any court proceeding to modify the divorce decree or to set child support in a specific amount. Absent clear and convincing evidence tending to prove that the father had support obligations under "a support provision contained in a decree of divorce ... or modification of such decree, or other lawful orders of support entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support," the petitioner's application for adoption without the consent of the father, if premised upon § 60.6(2)(a), must fail. We find that there is no such evidence.

*387 IV
In the absence of a valid court order which imposes upon the noncustodial parent a clear duty to support, the obligation then becomes one of support commensurate with the parent's financial ability. An unadjudicated support duty may be satisfied by means other than monetary contributions. Moreover the parental bond may not be severed if, during the period prescribed in § 60.6(2), the noncustodial parent contributed in any form, according to his ability, toward the child's living expenses. In re Adoption of C.M.G., 656 P.2d 262 (Okl. 1982).
Here the evidence is uncontroverted that the natural father was disabled soon after the 1983 birth of the child. In 1986 he made application for social security disability benefits and arranged for the child to receive a dependent's allotment. This is evidence that the father had no ability to earn sufficient money to pay any child support and therefore the father was entitled to credit for the social security benefits under the circumstances of this case.
Nibs v. Nibs, 625 P.2d 1256 (Okl. 1981), cited by the parties, is distinguishable from the instant case in several significant respects. In Nibs, the noncustodial father was totally disabled and receiving social security disability benefits when the divorce was granted. The decree, entered after the trial court received evidence of the father's disability and employment income, expressly ordered the father to pay his ex-wife monthly child support but made no provision for the substitution of social security benefits for his cash obligation.
The Nibs court, in confirming the trial court's discretionary power to consider social security payments as credits against child support, was moved by the inadequacy of the court-ordered child support payments and the fact that the father made the payments for about eight months before stopping or decreasing payments upon his remarriage.
Unlike the situation in Nibs, the instant case does not merely involve an action for contempt and request for judgment of child support in arrears. On the contrary, the petitioner's adoption petition, if sustained by the trial court, will permanently sever the bond between the father and his child. Termination of a right so fundamental calls for application of "the full panopy of procedural safeguards." In re Adoption of Darren Todd H., 615 P.2d 287, 290 (Okl. 1980). A parent who is financially unable to provide for the support of his child and who has not voluntarily placed himself in a disabling position to avoid his parental responsibilities is not within the class of persons whose right to withhold consent is judicially extinguishable. In re Adoption of J.L.H., 737 P.2d 915 (Okl. 1987).
Here there is no evidence that the father is voluntarily unemployed. And the evidence presented to the trial court does not establish that the father possessed financial means to contribute to his child's support beyond social security payments. We hold that based upon the record actually presented to the trial court the social security benefits received on behalf of the child constitute satisfaction of the father's support obligation within the meaning of § 60.6(2), and therefore there is no basis for finding that the father willfully failed to satisfy his support obligation during the period in question. In re Adoption of C.M.G., 656 P.2d at 266.

V
Because we find no evidence in the record of the natural father's willful failure to support his son according to his financial ability, for this and the other reasons mentioned, we vacate the void order terminating his parental rights and remand to the trial court with instructions to deny the application to proceed without the father's consent.
REIF, P.J., concurs.
MEANS, J., dissents.
MEANS, Judge, dissenting.
I respectfully dissent.
Natural father, Bobbie L. Holcom, appeals from the order of the trial court terminating his parental rights and permitting *388 the adoption of the minor child, B.R.H., by his stepfather, Chris C. Wadkins, to proceed without natural father's consent. Having reviewed the record and applicable law, I would modify that portion of the trial court's order terminating natural father's parental rights, and affirm that portion of the trial court's order depriving natural father of his power to withhold consent to the adoption of B.R.H.
On June 7, 1988, Stepfather filed a petition for adoption of the minor child and sought an order, pursuant to 10 O.S.Supp. 1990 § 60.6, determining B.R.H. to be eligible for adoption without natural father's consent. The petition stated that Stepfather and Janice Wadkins, the natural mother of the child, were married on February 28, 1986; that the child had been in Mother's custody since his birth on February 9, 1983; that she consented to the adoption; and that the natural father "has failed to contribute to the support of the child for a period of twelve (12) months immediately preceding the filing of this Petition."
After several continuances, the case was heard on its merits on May 15, 1989. Natural father was represented by counsel, but he did not personally appear at the hearing. His testimony was submitted by deposition previously taken in the matter.
The evidence and testimony presented revealed that the natural parents of the child were married only a short time, from March 12, 1982, until September 9, 1982, when they were divorced. At the time of the divorce, Mother was pregnant with B.R.H. The divorce decree granted custody of the child to Mother and required natural father to "pay reasonable child support for the care and maintenance of said child" after his birth.
Mother testified that after the birth of B.R.H. she appeared before the court and an ex parte order requiring natural father to pay support in the amount of $200 per month was entered. She further testified that natural father never contacted her after B.R.H.'s birth, never attempted to see the child, and never made any child support payments or provided any other financial assistance. In 1986 she began receiving $126 per month in social security disability benefits.
Natural father's deposition testimony revealed that he had not completed high school or had any vocational training. Following the divorce, he moved to Colorado. He was unemployed from 1983-1985 while he was hospitalized and treated for a manic-depressive condition. In 1986 he was again hospitalized for three months as a result of problems with his prescribed medication.
At the time of his deposition in October 1988, he was still unemployed but he had made attempts to secure employment. His sole means of support was $374 per month in disability benefits he received from social security. He testified that when he first sought disability benefits in 1984-85, he advised the Social Security Administration that B.R.H. was his dependent. He testified that he had never seen the child, but following the child's birth he once attempted to send $250 to Mother for the child and the envelope was returned unopened.
The trial court ordered "that the parental rights of the natural father ... be terminated and that the petitioners [sic] herein proceed with the adoption of the minor child without the consent of any other person." It is from this order that natural father appeals.
In addressing the allegations of error raised by natural father on appeal it should be first noted that the only issue of which he had notice and the only issue properly before the trial court was his right to consent to the adoption of B.R.H. The petition filed by Stepfather made no mention of termination of natural father's parental rights, but merely sought a declaration that B.R.H. was eligible for a consentless adoption by virtue of section 60.6.
A declaration that a child is eligible for adoption without the consent of natural parents does not effect a termination of all parental rights. Merrell v. Merrell, 712 P.2d 35 (Okla. 1985). Until there is a final decree of adoption, the relationship of parent and child still exists. Section 60.6 addresses only the parent's right to consent. *389 Merrell, 712 P.2d at 38. For example, although a decree of adoption may be entered without the parent's consent, the parent may still contest the propriety of the adoption and present evidence that may be relevant to the trial court's inquiry into whether the adoption will promote the best interests of the child. Davis v. Neely, 387 P.2d 494 (Okla. 1963).[4] I would modify that portion of the trial court's order terminating natural father's parental rights, as that issue was not raised by the parties.
The next issue to be addressed concerns that portion of the trial court's order determining B.R.H. to be eligible for adoption without consent of natural father. In "Proposition I" of his brief in chief, natural father contends that the trial court erred in admitting, over his objection, Mother's testimony concerning a document which purportedly modified the original divorce decree and required him to pay the sum of $200 per month in child support. He maintains that because the document was not a certified copy and was not file-stamped, it was error to permit the use of the document to establish nonpayment of ordered support under section 60.6.
Natural father did not preserve this allegation of error in his petition in error. Generally, allegations of error that are not raised in the petition in error will not be reviewed. Greene v. Circle Ins. Co., 557 P.2d 422, 423 (Okla. 1976). In his answer brief, Stepfather objected to our consideration of the alleged evidentiary error. As a result, natural father has in his reply brief requested leave to amend the petition in error pursuant to Civil Appellate Procedure Rule 1.17(a), 12 O.S. 1981 ch. 15, app. 2.
The dispositive issue is whether natural father's failure to pay child support was willful. 10 O.S.Supp. 1990 § 60.6(2). The source of the duty to pay child support, the divorce decree or a modification of that decree, is immaterial. The issue of whether natural father was under a decretal obligation to provide support or under an obligation to contribute to the support of the child in a manner commensurate with his financial ability, is also not dispositive of this appeal. It is my opinion that his request for leave to amend the petition in error should be denied, and that we do not consider his challenge to the trial court's evidentiary ruling.
Natural father contends that the trial court's determination that the child was eligible for adoption without his consent was in error because there was "no clear showing that [he] is within the class of persons whose power to consent to adoption may be judicially extinguished." He submits that he is subsisting entirely upon monthly social security disability payments in the amount of $374 and, therefore, the monthly social security disability payments made on behalf of the child for the three years preceding the filing of the case should be deemed to satisfy his support obligation. I do not agree.
Natural father cites no supreme court decision directly addressing the issue of whether social security payments should displace child support obligations as a matter of law. He does identify the case of Nibs v. Nibs, 625 P.2d 1256 (Okla. 1981), as having an analogous fact situation, and requests that the dissenting opinion in that case "be viewed favorably."
In an action arising out of an application for a contempt citation, the supreme court in Nibs considered whether social security disability payments should be credited against a father's decretal child support obligation. The social security award in Nibs was in existence when the decree of divorce was granted, and the decree made no mention of allowing the social security payments to substitute for that obligation.
After reviewing cases from other jurisdictions holding that credit should be allowed, cases refusing to permit the credit, and the record on review, the Nibs court determined that the trial court hearing the contempt citation erred in granting father the credit. It concluded that the decision of whether to credit social security payments *390 against the child support obligation was within the sound discretion of the trial court which granted the divorce decree. Id. at 1258.
Under extenuating circumstances some courts have found it equitable to treat social security disability and like benefits as a substitute for child support payments. See, e.g., Potts v. Potts, 240 N.W.2d 680 (Iowa 1976). Other courts have reached a contrary result. See, e.g., Fowler v. Fowler, 156 Conn. 569, 244 A.2d 375 (1968); Chase v. Chase, 74 Wash.2d 253, 444 P.2d 145 (1968). If such benefits were simply equivalent to a contribution to child support, the lengthy discussions of equity in which these courts engage would not be necessary.
Although we find the factual situation in Nibs to be quite different from the instant case, Nibs does indicate that our determination of the issue herein should rest upon whether the trial court abused its discretion in declining to credit natural father with the social security payments. After reviewing the record, I find no such abuse of discretion occurred.
Although natural father was in the Colorado State Hospital from 1983-1985, and received follow-up treatment for three months in 1986, that time period is not relevant for purposes of our review. The critical time period for examination herein is from June 1987 through June 1988  the statutory period of twelve months immediately preceding the filing of the adoption petition.
Natural father admits that during the critical time period he neither made, nor attempted to make, any payment on behalf of the child from his personal funds, and that the child received nothing from him during that time period except the social security payments. Admittedly, natural father's resources were limited, but he had, according to his deposition testimony, approximately $125 remaining each month after payment of his basic living expenses. When questioned regarding how he spent this remaining money, he responded that he spent it on "chew," "pop" and "odds and ends."
The clear and convincing evidence offered by Stepfather that natural father willfully failed to contribute to the support of B.R.H. for the year last preceding the filing of the petition for adoption was not controverted by natural father. Inasmuch as the portion of the trial court's order declaring B.R.H. eligible for a consentless adoption is supported by clear and convincing evidence, it should be affirmed. In the Matter of Adoption of J.L.H., 737 P.2d 915, 920 (Okla. 1987); In the Matter of Adoption of V.A.J., 660 P.2d 139, 141 (Okla. 1983).
NOTES
[1] Although this would also include the mother, it is unimportant because the mother filed a written consent to the adoption.
[2] "Issues arise on the pleadings" both as to matters of law and fact. 12 O.S. 1981 § 552.
[3] Renumbered from 12 O.S. 1981 § 1272, by Laws 1989, c. 333 § 1, effective November 1, 1989.
[4] Davis v. Neely has been overruled only to the extent that it held a determination of eligibility is not a final, appealable order. See Matter of Adoption of E.S.P., 584 P.2d 209, 210 (Okla. 1978).