155 P.3d 1 (2006)
2006 OK 80
In the Matter of the ADOPTION OF L.D.S., a minor child.
Joseph Staton and Jennifer Staton, Petitioners/Appellees,
v.
Jason Shuler and Norma Jean Shuler, Respondents/Appellants.
No. 102,250.
Supreme Court of Oklahoma.
October 24, 2006.
Supplemental Opinion on Rehearing March 6, 2007.
William R. Higgins, Brant E. Shallenburger, Carle & Higgins, P.C., Claremore, Oklahoma, for Respondents/Appellants.
Leslie A. Ellis Kissinger, Claremore, Oklahoma, for Petitioners/Appellees.
*3 Gwendolyn L. Clegg, Tulsa, Oklahoma, for L.D.S.
COLBERT, J.
¶ 1 The issue in this matter is whether the trial court's determination, that the natural parents willfully failed to contribute to the support of their deprived child, is supported by clear and convincing evidence. This Court holds that the evidence that the natural parents' non-support was willful does not rise to the level of "clear and convincing." Therefore, the opinion of the Court of Civil Appeals which affirmed that decision is vacated and the judgment of the trial court which declared the child eligible for adoption without parental consent is reversed.

FACTS AND PROCEDURAL HISTORY
¶ 2 On June 23, 2003, the natural parents, Jason and Norma Shuler, placed their five-month-old daughter, L.D.S., with the child's paternal aunt and aunt's husband, Jennifer and Joseph Staton, so that the child would not be at home while the parents were having an argument. The next day, four half-siblings of L.D.S. were removed from the home because one of them had been spanked by her father and step-mother with excessive force which caused physical injury. The District Attorney for Rogers County filed a petition on July 29, 2003, alleging that L.D.S. was a deprived child. A hearing was held on October 16, 2003, and L.D.S. was adjudicated deprived after the parties stipulated to the allegations contained in the petition.
¶ 3 In a juvenile minute order dated November 20, 2003, the trial court ordered that L.D.S. was to remain in the custody of the Department of Human Services (DHS) and that she would continue to be placed with her aunt and aunt's husband as foster parents. The natural parents were provided a treatment plan which required them to enroll in classes and programs to teach them to discipline without abuse. Neither the plan nor the juvenile minute order set an amount of child support.
¶ 4 At the suggestion of the attorney appointed to represent the child, the natural parents tendered a check for $125.00 for the support of L.D.S. to the foster parents in December 2003. The foster mother refused the check stating that she "could not accept the check because [she] was already getting paid through the State for foster care." The check was held for three months at the natural parents' request "so they would have a record that they had paid" and then the check was returned to them. DHS would later acknowledge this tender of payment in a letter to the trial judge dated March 15, 2004.
¶ 5 The trial court mentioned the issue of child support in a juvenile minute order on February 13, 2004. It states: "Documentation of Natural Father's employment issues to be provided to the court regarding child support." It was not until July 1, 2004, however, that an amount of child support was judicially determined. The order from that date provided: "[Natural Mother] to begin child support payments in the amount of $75 within 10 days and provide proof of payment, payable to caretaker." The record on appeal is silent as to why no separate formalized support order was entered, why child support was ordered only from the natural mother, why no provision was made for an income assignment, and why child support payments were made payable to the foster parents rather than to DHS. In an August 20, 2004, juvenile minute order, the trial court noted that "child support remains as previously ordered."
¶ 6 Payments of $75.00 were tendered in September and October of 2004. The foster parents refused the tender of these payments citing the DHS rule prohibiting any foster parent who receives assistance from the state from accepting such payments. After the foster parents refused the September payment, the check was given to the DHS caseworker. It was held and then returned to the natural mother who would later testify that the caseworker refused the tender because no child support order was in place. The natural mother further testified that she never tendered a $75.00 check written in December because she knew no one would accept it. Grandmother of the child would later testify that all the checks had been written on her account, because her daughter *4 had no bank account, and that the money represented by those checks remained in the account.
¶ 7 The next pronouncement concerning child support came at a hearing on December 2, 2004. The juvenile minute order provided: "Child support order to be prepared by [attorney for the natural parents] from 12-15-03 to present. Full accounting to be prepared as to [the natural father], [the natural parents] to submit w2's as soon as they receive them to [their attorney]; any tax refund to be diverted to child support."
¶ 8 On January 14, 2005, the district attorney and the attorney for the child filed a motion to terminate the parental rights of the natural parents. The motion was based, among other things, on allegations of the natural parents' willful non-support. The matter was set for trial, but on February 11, 2005, the foster parents filed an application to adopt without the consent of the natural parents. This application was also based on allegations of willful non-support and on an alleged failure to maintain a significant relationship with the child. The motion to terminate parental rights was withdrawn and a hearing on the application to adopt was held on March 29th and 30th of 2005.
¶ 9 At the conclusion of the hearing,[1] the trial court held that the testimonies of the natural mother and the grandmother were "not credible" and that the tendered payments were "mere token gestures." As a result, the trial court concluded that the natural parents' consent to their child's adoption was not required based on clear and convincing evidence of willful non-support. Child support was continued in the amount of $75.00 as to the natural mother and, for the first time, support was ordered to be paid from the natural father in the amount of $75.00 per month. Payments were to be paid to the natural parents' attorney to be held in his client trust account. In addition, the trial court suspended visitation between the natural parents and L.D.S., ordered that there be no contact between the natural and the foster parents, and announced that the natural parents would not be allowed to participate in the adoption proceeding. The holdings concerning parental consent and child support were memorialized in an order entered on May 27, 2005.
¶ 10 The dispositive issue on appeal was whether willful non-support had been demonstrated by clear and convincing evidence. The Court of Civil Appeals affirmed, but it was sharply divided on the issue. That issue continues to be dispositive and is before this Court on certiorari review.

ANALYSIS
¶ 11 "[T]he right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the federal and state constitutions." In re Adoption of D.T.H., 1980 OK 119, ¶ 18, 615 P.2d 287, 290 (overruled on other grounds). The magnitude of such a right requires clear and convincing evidence of a child's eligibility for adoption. Id. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established." In re C.G., 1981 OK 131, ¶ 17 n. 12, 637 P.2d 66, 71 n. 12. The burden of proof is on the party seeking to sever the parent-child relationship to demonstrate why parental consent is not required. D.T.H., 1980 OK 119, ¶ 4, 615 P.2d at 288. The clear and convincing evidence requirement "balances the parents' fundamental freedom from family disruption with the state's duty to protect children within its borders." C.G., 1981 OK 131, ¶ 17, 637 P.2d at 70.
¶ 12 The statutory grounds for adoption without parental consent include the following:

*5 B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child . . . has willfully failed, refused, or neglected to contribute to the support of such minor:
1. In substantial compliance with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support; or
2. According to such parent's financial ability to contribute to such minor's support if no provision for support is provided in an order.
Okla. Stat. tit. 10, § 7505-4.2 (2001). In applying this provision, "[t]he issue of wilfulness is a fact question for the trial court." D.T.H., 1980 OK 119, ¶ 9, 615 P.2d at 289. "The wilfulness requirement of the statute is intended to prevent an arbitrary application of the statute and a parent's inability to comply with a support order would always be relevant to show an absence of wilfulness." Id. ¶ 19, 615 P.2d at 291.
¶ 13 In this matter, the natural parents' inability to comply with their support obligation did not result from a lack of income. Rather, the record on appeal demonstrates that it was caused in large part by the apparent confusion and the misdirection of the trial court, counsel, and DHS in fulfilling the mandate of the Oklahoma Children's Code, Okla. Stat. tit. 10, §§ 7001-1.1 through 7007-1.9 (2001 & Supp.2005).
¶ 14 The Children's Code requires parents whose child is made a ward of the court to "[r]eimburse the Department of Human Services, in whole or in part, for any costs and expenses incurred by the Department in providing any services or authorizing actions taken pursuant to the Oklahoma Children's Code for the child including, but not limited to, all or some part of placement services, medical care and mental health services of a child, as authorized by law." Id. § 7003-8.7(A)(1) (Supp.2005). The trial court must, within six months of the filing of a deprived child petition, address the issue of child support[2] or refer the issue to the Child Support Enforcement Division of DHS. Id. § 7003-8.8(B)(2) (Supp.2005). The Children's Code further directs the trial court to calculate a total monthly child support obligation from the child support guidelines and to order each parent to pay his or her percentage of the obligation even if the parents reside together. Id. § 7003-8.8(B)(3)(b & d). A standard child support form is to be used and filed as a separate document. Id. § 7003-8.8(B)(3)(h)(1 & 2). "The child support order shall contain an immediate income assignment provision pursuant to Section 115[3] of Title 43 of the Oklahoma Statutes." Id. § 7003-8.8(B)(3)(f). "Support monies collected while the child is in [DHS] custody and out-of-home placement are used to reimburse . . . [DHS] for monies expended to meet the child's needs." Okla. Admin. Code 340:75-13-26(b).
¶ 15 These clear and unambiguous statutory directives were not followed in this matter. Instead, the trial court belatedly entered a juvenile minute order which directed the natural mother to pay $75.00 per month "to caretaker." If the directives had been followed, an order of child support would have been entered and the required income assignment would have insured that child support was directed to the proper entity, DHS, through the Centralized Support Registry.
¶ 16 Under the facts presented in this matter, the natural parents' failure to comply with their child support obligation cannot be considered to be clearly and convincingly "willful."[4] The evidence presented to the *6 trial court does not produce a firm belief or conviction that the failure to pay support was a product of the natural parents' will. Because the foster parents have not met their burden of proof, the natural parents' consent to adoption was required.
CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; TRIAL COURT REVERSED.
CONCUR: WATT, C.J., HARGRAVE, OPALA, KAUGER, EDMONDSON, COLBERT, JJ.
DISSENT: WINCHESTER, V.C.J., LAVENDER, TAYLOR, JJ.

SUPPLEMENTAL OPINION ON REHEARING
¶ 1 Rehearing in this matter is denied. Procedural irregularities in the trial court have occurred during the time this matter was on appeal, however, which require further direction from this Court. This supplemental opinion describes those irregularities and their effect, if any, on the opinion previously issued in this matter. See In re L.D.S., 2006 OK 80, ___ P.3d ___, 2006 WL 3008471 (Oct. 24, 2006).
¶ 2 While an appeal was pending from the determination that the child was eligible for adoption without the consent of the natural parents and the matter stood assigned to Division III of the Court of Civil Appeals, the trial court entered a final decree of adoption. No notice of this significant event was provided to the Court of Civil Appeals or to this Court. The court file in the adoption proceeding indicates that counsel for the natural parents was present at the proceeding but there is no record that any objection was raised. Twenty days after the final decree had been entered, a divided Court of Civil Appeals affirmed the trial court's determination that the child was available for adoption without the consent of the natural parents based on willful nonsupport.
¶ 3 The natural parents timely brought a petition for certiorari review. A response was filed on behalf of the minor child and a response was filed by the adoptive parents who are the natural father's sister and brother-in-law. Not one word in any of the certiorari filings gave this Court any indication that a final decree of adoption had been entered. Ultimately, this Court reversed the trial court's determination and held that willful nonsupport had not been demonstrated by clear and convincing evidence.
¶ 4 The first mention by anyone to this Court that the adoption had been finalized came in the petition for rehearing filed on behalf of the minor child. Even then, it was mentioned in passing and no legal effect was ascribed to the adoption decree. The petition for rehearing filed by the adoptive parents made no mention of the final decree and no response to the petitions for rehearing was filed by the natural parents. This Court directed the parties to brief the issue of the trial court's jurisdiction to issue a final decree of adoption and directed the trial judge to show cause why the final decree should not be vacated based on the appeal of the trial court's decision on the "Motion to Adopt without the Consent of Natural Parents." The briefs and show cause response were filed and a hearing was held before a Supreme Court Referee. This Court holds that the trial court lacked the authority to enter a final decree of adoption while the issue of the child's eligibility for adoption was on appeal. Thus, the adoption decree is void.
¶ 5 "When a petition in error is timely filed, the Supreme Court shall have jurisdiction of the entire action that is the subject of the appeal." Okla. Stat. tit. 12, § 990.1 (2001). Jurisdiction remains in the trial court only for the limited purposes enumerated in Rule 1.37 of the Oklahoma Supreme Court Rules, Okla. Stat. tit. 12, app. 1 (2001). Those purposes include "grant[ing] or modify[ing] orders in regard to custody, guardianship, *7 support, and maintenance" and "determin[ing] any issue whose resolution pending appeal is explicitly authorized by law." Id. at Rule 1.37(a)(2) & (9). The trial court asserts that specific authorization to act was found in section 7505-2.1(J) of title 10 which provides:
The pendency of an appeal shall not suspend the order of the district court regarding a minor, nor shall it remove the minor from the custody of that court or of the person, institution, or agency to whose care such minor has been committed, unless the Supreme Court shall so order.
With this provision as the perceived authority to act, the trial court reasoned that a final decree of adoption could be entered because the natural parents had not sought to stay the adoption proceeding. That court asserts that "[w]ith no such stay order before the trial court and no objection having been made, either orally or in writing, and due notice having been given to the biological parents, the trial court believed it had jurisdiction."
¶ 6 The trial court believed that adoption is a modification of custody over which jurisdiction was retained while the issue of the need for the natural parent's consent to adoption was on appeal. That belief was mistaken. Although a final decree of adoption does change custody, it is much more than a custody determination. It supplants the rights of the natural parents with those of the adoptive parents to effect a permanent change in legal custody which permanently deprives the natural parents of their parental rights.
¶ 7 Under Supreme Court Rule 1.37(a)(2), an appeal does not divest the trial court of the authority "to grant or modify orders in regard to custody, guardianship, support, and maintenance." However, the authority to issue a final decree of adoption while the appeal was pending was not within the trial court's retained jurisdiction. "It is well settled in Oklahoma, that while an appeal is pending in the Supreme Court, the trial court is without jurisdiction to make an order materially affecting the rights of the parties to that appeal." In re Chad S., 1978 OK 94, ¶ 6, 580 P.2d 983, 984. Thus, "[a]bsent a compliance with § 1031.1 [by which a court may correct, open, modify or vacate its own judgment, decree, or appealable order within thirty days] the trial court loses its jurisdiction to make any order that pertains to the same issues then on appeal." Id. at ¶ 7, 580 P.2d at 985. Therefore, the trial court had no authority to issue a final decree of adoption until the issue of the child's eligibility for adoption had been finally resolved on appeal.
¶ 8 The adoptive parents and counsel for the child assert that, notwithstanding a void adoption decree, this matter is controlled by section 7505-7.2 of title 10 which provides:
A. Except as otherwise provided by paragraph 3 of subsection B of Section 7503-2.7 of this title:
1. When an interlocutory or final decree of adoption has been rendered, a decree terminating parental rights cannot be challenged on any ground, either by a direct or a collateral attack, more than three (3) months after its rendition. The minority of the natural parent shall not operate to prevent this time limit from running; and
2. No adoption may be challenged on any ground either by direct or collateral attack more than three (3) months after the entry of the final adoption decree regardless of whether the decree is void or voidable, and the minority or incompetence of the natural parent shall not operate to prevent this time limit from running.
B. In any challenge on any ground either by a direct or collateral attack, the court shall not enter a decision which is contrary to the best interests of the adopted minor.
It is maintained that because there was no challenge to the final decree of adoption by appeal or otherwise within three months, the decree is unassailable and this Court's determination that the child was not eligible for adoption without parental consent is of no effect and moot. The cited provision, however, does not apply to this matter.
¶ 9 Under the view of section 7505-7.2 asserted, a decision regarding a child's eligibility for adoption without parental consent could be rendered incapable of review. A trial court could enter a final decree of@ adoption while the eligibility issue is on appeal and so long as the appellate process, *8 potentially including certiorari review, took an additional three months to conclude, the appellate decision would become irrelevant because section 7505-7.2 would make the adoption unassailable.
¶ 10 The Adoption Code provides that "[a]n appeal from an order determining a child eligible for adoption which does not terminate parental rights may be taken in the same manner provided for appeals from the court as provided in this subsection." Okla. Stat. tit. 10, § 7505-4.1(I)(b) (2001). The Legislature would not have provided for a right of appeal only to have the issue irrevocably predetermined by the trial court through the operation of section 7505-7.2. That provision was not intended to apply where to do so would subvert appellate review of a decision that a child is eligible for adoption without the consent of the natural parents.
¶ 11 In this matter, no one brought a challenge to the decree of adoption. The jurisdictional issue was raised sua sponte by this Court. Thus, the statute is inapplicable. Even if the statute applied, it cannot operate to deprive the natural parents of due process of law by negating this Court's determination that their child was not eligible for adoption. As a statute of limitation, section 7505-7.2 "is subject to the constitutional limitations of the United States and Oklahoma Constitutions and must not be interpreted so as to bar proceedings beyond the [limitation] period where the question of due process of law is timely presented even though more than [the time period] has expired after the adoption decree was entered." In re Lori Gay W., 1978 OK 140, ¶ 14, 589 P.2d 217, 220.
¶ 12 "[T]he relationship of parents to their children [is] a fundamental constitutionally protected right." In re Chad S., 1978 OK 40, ¶ 12, 580 P.2d at 985 (citing Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The determination that a child is eligible for adoption without parental consent does not merely infringe that fundamental liberty interest, it is a significant step in destroying it. For this reason, the result achieved in an adoption proceeding is not the only consideration even if the result is perceived to further the best interests of the child. Parents must be provided the opportunity to fully and finally litigate the issue of their child's eligibility for adoption, including an appeal, before an adoption can be finalized and the child is permanently removed from the family.
¶ 13 The interests of all parties to an adoption are furthered by speedy and efficient proceedings. "But the Constitution recognizes higher values than speed and efficiency." Stanley, 455 U.S. at 656. Until the issue of a child's eligibility for adoption has been finally determined, the child and the natural parents "share a vital interest in preventing erroneous termination of their natural relationship." Santosky, 455 U.S. at 760. Thus, the best interests of the child are not furthered by judicial shortcuts, intentional or unintentional, which reach an expeditious result but fail to recognize the fundamental nature of the right of parents to the care, custody, and management of their child. In fact, the best interests of the child can be served in no legitimate manner except in obedience to the policies and procedures mandated by law.
¶ 14 No one's interests have been served ultimately by the manner in which this matter has been litigated and adjudicated. As the opinion explains, the child was declared to be eligible for adoption despite the fact that willful nonsupport had not been demonstrated by the requisite clear and convincing evidence. But to compound that error by entering a final decree of adoption while the erroneous decision was on appeal is astonishing. Just as disturbing is the fact that counsel for the natural parents took no action to forestall the adoption through an original proceeding in this Court. The failure of all parties to mention the final decree of adoption in the certiorari filings remains unexplained and it cannot be excused.
¶ 15 The final decree of adoption granted on October 21, 2005, is null and void and it is hereby vacated. Also vacated are any administrative actions taken by the adoptive parents or the court to finalize the adoption. *9 Because the final decree of adoption entered in this matter has no legal effect, the parental rights of the natural parents remain intact by virtue of this Court's opinion of October 24, 2006. On remand, the trial court is directed to return the parties to the legal status they held before the erroneous declaration that the child was available for adoption without parental consent. Further proceedings must comply with the Oklahoma Adoption Code.
¶ 16 The lesson of this matter is that the interests of the child and ultimately all concerned in matters regarding parental rights can be adequately served only through scrupulous adherence to the statutory scheme found in the Adoption Code. This Court expects that the unprecedented errors committed by the trial court and by counsel in this matter will not be repeated.
CONCUR: WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, COLBERT, JJ.
CONCUR IN PART DISSENT IN PART: LAVENDER, TAYLOR, JJ.
NOTES
[1] At the close of the foster parents' evidence, the trial court directed a verdict against the foster parents on their claim that the natural parents had failed to "establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption." Okla. Stat. tit. 10, § 7505-4.2(H)(1) (2001). The foster parents had failed to present any evidence regarding that issue.
[2] During the period between the filing of the deprived child petition and the entry of a child support order, a natural parent must contribute to the child's support according to the parent's financial ability. Okla. Stat. tit. 10, § 7505-4.2(B)(2) (2001).
[3] Section 115(A) requires that "[e]very order providing for the support of a minor child . . . shall contain an immediate income assignment provision if child support services are being provided under the state child support plan. . . ." Okla. Stat. tit. 43, § 115(A) (2001).
[4] Today's decision is based on the reasoning that natural parents' inability to comply with their child support obligation resulted from the misdirection of counsel, DHS, and the trial court. Under such unusual circumstances, the failure to comply cannot be considered willful. This decision does not hold that the payments tendered were in substantial compliance with the requirements of section 7505-4.2 of title 10. Thus, this matter is distinguished from In re C.D.O., 2002 OK CIV APP 9, 39 P.3d 828, which addressed the issue of what constitutes "substantial compliance."