2012 OK CIV APP 57

In the Matter of the GUARDIANSHIP OF R.T., a Minor Child.

Christie Taylor, Appellant,

v.

State of Oklahoma, Appellee.

No. 109,762.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 11, 2012.

Released for Publication by the Court of Civil Appeals May 11, 2012.

Jeff M. Wise, Oklahoma City, OK, for Appellant.

David Prater, District Attorney, Jane A. Brown, Assistant District Attorney, Oklahoma City, OK, for Appellee.

Ryan Hauser, Public Defender's Office, Oklahoma City, OK, for Minor Child.

Blayne Allsup, Oklahoma City, OK, for Guardians.

WM. C. HETHERINGTON, JR., Judge.

¶1 Appellant, Christie Taylor (Mother), seeks review of the trial court's order appointing her parents, Maurice C. Wilmoth and Judy Wilmoth (Grandparents), as permanent guardians of her daughter, R.T. (Child).

We reverse because the record fails to show (1) notice of the hearing and motion was served upon the parties as required by 10A O.S.2011 § 1–4–710(B), and (2) Child was adjudicated deprived as required by 10A O.S. 2001 § 1–4–709(A)(1). The trial court's last custody order placing Child in the custody of the Oklahoma Department of Human Services (DHS) remains in effect. This opinion does not affect DHS placement of Child in any way. Placement of Child rests solely within the discretion of DHS subject to its rules, findings, and procedures.

¶2 Appellee, State of Oklahoma (State), took Child into emergency custody in March 2010 after her father (Father) was arrested for sexually abusing her older step-sister. State petitioned to adjudicate Child deprived as to Mother and to terminate Mother's parental rights based on allegations Mother failed to protect the children from heinous and shocking sexual abuse. State placed Child with Grandparents.

¶3 State's petition came on for jury trial in February 2011. After the close of State's evidence, the parties reached a settlement agreement, and the trial court made the following record:

> THE COURT: The parties have reached an agreement in which the Court will excuse the jury. The mother has announced that she is in agreement with a Title 10A guardianship. She is present and represented by her attorney....
>
> . . .
>
> The agreement, that has been presented to the Court, is that the parties will prepare a Title 10A guardianship with the understanding that there will be, between now and the next court date, family counseling that will be ongoing....
>
> . . .
>
> The Court needs to take some testimony from the mother to make certain that she understands what these proceedings are and that she's in agreement with those proceedings....
>
> . . .
>
> Ms. Taylor, you've heard the discussion with regards to the Title 10A guardianship and, as such, you have a right to notice of

that-of those proceedings. And do you understand what the parties have discussed and are you in agreement with proceeding as to a Title 10A guardianship?

> [MOTHER]: Yes, Your Honor.

The trial court then continued the matter for 90 days "for a conclusion of the guardianship or proceeding on the adjudication." It entered a minute order setting the matter for a review hearing on May 24, 2011.

¶4 At the May 24, 2011 review hearing, Mother signed the following statement before the trial court:

> I, Christie Taylor, state under oath that I am the mother of [R.T.] and that I do hereby consent to the appointment of the Petitioner(s) Reese [sic] and Judy Wilmoth as Guardian(s) of the person(s) and/or estate of the above named minor(s) and waive notice to further proceedings herein.

The trial court's minute order memorializing the hearing indicated Mother's attorney was not present with the notation "(NP)" after the attorney's name. It set a review hearing for July 5, 2011.

¶5 On June 30, 2011, a new attorney for Mother filed an "Entry of Appearance and Revocation of Previous Consent to Guardianship." The document did not contain a certificate of mailing.

¶6 At the review hearing on July 5, 2011, Mother appeared with her new attorney. The attorney announced Mother had revoked her previous consent and requested a 30 day continuance so that he could research the revocation of consent. State's attorney objected, arguing Mother stopped a jury trial based on her willingness to consent to the guardianship. The trial court continued the matter to July 19, 2011, and told Mother's attorney to research the issue of costs as well because if the parties had to go back to jury trial, the trial court would entertain State's motion for costs. The trial court also told the attorney to "be ready either way we go."

¶7 The same day, State filed its Motion for Permanent Guardianship. The motion contained no notice of hearing and no certificate of mailing. The record contains no return of service of the motion.

¶ 8 At the July 19, 2011 hearing, the trial court stated that since the last hearing, State had filed a motion for guardianship. Mother's attorney said he had received no notice of the motion. State's attorney asserted Mother had waived notice. The trial court then heard argument on revocation of consent.

¶ 9 Mother's attorney stated Mother withdrew her consent because of visitation issues. He acknowledged the trial court could find Mother was estopped from revoking her consent or proceed with a contested permanent guardianship. He asked the trial court to afford Mother the opportunity to be heard on a contested permanent guardianship.

¶ 10 In response, State argued Mother's presence showed she had notice of the hearing. State argued Mother was aware Grandparents would have the power to control visitation when she consented to the guardianship, and Mother should have to show fraud or duress in order to withdraw her consent. State asked the trial court to deny the revocation of consent and to grant the guardianship.

¶ 11 Child's attorney revealed he was unaware State had filed the motion for permanent guardianship, but urged the trial court to rule that Mother could not withdraw her consent absent a showing of fraud or duress and to grant the guardianship.

¶ 12 The trial court granted the motion for permanent guardianship and named Grandparents as Child's permanent guardians. After the trial court announced its ruling, Mother's attorney again asserted he had no notice of the motion for guardianship and State's attorney again asserted Mother was not entitled to notice because she had waived it. The trial court overruled the objection.

¶ 13 The same day, the trial court entered its order appointing Grandparents as Child's permanent guardians. The order stated:

All parties entitled to notice are present which include, but is not limited to the district attorney, attorney for the minor child, attorney for the proposed guardians, and attorney for the biological mother.... The Court being fully advised, makes the following findings and Orders:

1. The Court finds that notice of this hearing has been given in the form and manner and to the persons required by law and that this matter is being presented by agreement and in the best interest of the minor child.

. . .

5. If [Grandparents] are both unable or unwilling to continue as guardians, then the parties agree that Patricia Jeane (P.J.) Romberg or her designate shall serve as the alternate guardian of [R.T.].

. . .

12. Adoption is not the permanency plan for the child.

13. A permanent guardianship is in the best interest of the child.

. . .

20. Both parents, [Father] and [Mother], shall pay child support, in the amount specified below, to guardian....

. . .

22. [Mother] shall pay the sum of [$]461.58 per month for child support to the Guardian. In addition to child support, [Mother] shall pay to the guardian 64% percent [sic] of the medical and dental insurance, and the same percentage of the medical, dental, and other expenses as provided by statute that are not covered and paid by insurance. Payment is due with 30 days of the expense being incurred.

The trial court's order was signed by the attorneys for Grandparents, State, and Child, but not by Mother or her attorney.

¶ 14 Mother appeals from this order, contending the trial court erred in (1) finding no justification for Mother's revocation of consent to the permanent guardianship because misrepresentations by State induced her to enter into the agreement, (2) entering the guardianship order without notice properly served on Mother or her counsel, (3) entering a permanent guardianship order without an adjudication of Child as deprived, and (4) entering Mother's waiver of notice and consent to guardianship when her counsel was not present.

¶ 15 This matter is controlled by the Oklahoma Children's Code, 10A O.S.2011 §§ 1–4–709 to 1–4–711. Section 1–4–709 empowers a court to establish a permanent guardianship of a child with a relative or other adult if the guardianship is in the child's best interests and eight additional conditions are substantially satisfied. The first of the eight conditions is that the child has been adjudicated deprived.

¶ 16 Section 1–4–710 sets forth the procedure for imposing a permanent guardianship. It provides the district attorney or the child's attorney must file a motion for permanent guardianship in the deprived case. Subsection B specifies the notice requirement:

> Notice of the hearing as well as a copy of the motion shall be served upon the parties, the Department of Human Services, and the guardian ad litem of the child, if any. Notice shall also be sent to the tribe of an Indian child as defined by the federal Indian Child Welfare Act. Service shall not be required on the parent whose rights have been previously terminated.

¶ 17 Section 1–4–711 allows for modification or termination of the permanent guardianship upon clear and convincing evidence of a substantial change of material circumstances.

¶ 18 The Legislature only recently adopted these statutes, and there is not yet any published case law applying them. Laws 2009, c. 233, §§ 123–125. Both Mother and State attempt to impose upon this guardianship case rules having their origin in the statutes applicable to adoptions. For example, Mother argues consent should be revocable in like manner to that provided in adoptions by 10 O.S.2011 § 7503.2.6(C). State seeks to apply a waiver of notice procedure such as that authorized in adoptions by 10 O.S.2011 § 7505–4.1(C)(4).

¶ 19 In construing statutes, we must look to the language of the statute and presume that the Legislature has expressed its intent and intended what it expressed. *Messer–Bowers Co., Inc. v. State ex rel. Okla. Water Resources Bd.,* 2000 OK 54, ¶ 18, 8 P.3d 877, 882. Where the Legislature includes specific language in one provision and omits it in another provision of the same act, we will presume it acted intentionally with respect to the omission. *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). In the Oklahoma Children's Code, the Legislature imposed different requirements and procedures for adoptions, guardianships, and terminations of parental rights. Provisions that are unique to the adoption statutes are not applicable to permanent guardianships.

¶ 20 However, these three types of proceedings are similar in that they result in a parent being deprived of the right of the care, custody, companionship, and management of his or her child. This right is a fundamental right protected by the federal and state constitutions. *Adoption of L.D.S.,* 2006 OK 80, 155 P.3d 1, 4. "The fundamental nature of parental rights requires that the full panoply of procedural safeguards must be applied" before a parent may be deprived of that right. *In Re C.S.,* 1978 OK 94, 580 P.2d 983, 985.

¶ 21 Before the court may impose permanent guardianship, it must provide the parent with the full panoply of statutory and constitutional safeguards. The record in this case fails to show compliance with the safeguards. Pursuant to § 1–4–710(B) State is not excused from serving notice on the parents unless their rights have been terminated. Even then, State must serve notice upon the child's guardian ad litem. The record in this case shows service upon no one.

¶ 22 Even if we were to treat Mother's waiver of notice as effective although it was not authorized by statute, at most Mother waived notice only to the extent State sought the relief to which Mother consented, i.e., appointment of her parents as R.T.'s guardians. Mother did not waive her right to be notified if State sought additional relief, such as child support or appointment of an alternative guardian. After Mother's attorney appeared in the case, service was required upon him. 12 O.S.2011 § 2005(B). The record does not show that he mailed his entry of appearance to the other parties; however, once he made a general appearance

before the court on Mother's behalf, the other parties were on notice Mother was represented by counsel. The trial court erred in granting the permanent guardianship in the absence of service of State's motion on Mother or Mother's attorney.

¶ 23 Section 1–4–709 conditions the court's authority to grant a permanent guardianship upon the child being adjudicated deprived. In this case, Child has not been adjudicated deprived. The trial court erred in granting permanent guardianship in the absence of a deprived adjudication.

¶ 24 Mother also contends the trial court erred in entering her consent to guardianship and waiver of notice when her attorney was not present and in finding no justification for her revocation of consent because misrepresentations by State induced her to enter into the agreement. Mother presented neither of these issues to the trial court. We will not review questions not presented to and passed upon by the trial court. *Von Stilli v. Young,* 1950 OK 137, 203 Okla. 86, 219 P.2d 224, 228. However, we note that in responding to these issues on appeal, State's attorney appears to have obtained an ex parte nunc pro tunc order from the trial court in violation of Rule 3.5(b) of the Rules of Professional Conduct, 12 O.S.2011, Ch.1, App.3–A, and attached it to her brief in violation of Rule 1.11(i)(1) of the Oklahoma Supreme Court Rules, 12 O.S.2011, Ch. 15, App.1. The improper attachments to State's brief are stricken.

¶ 25 For the foregoing reasons, the trial court's order appointing Grandparents as permanent guardians of Child is REVERSED and this matter is REMANDED for new trial. Mother's motion for oral argument is denied.

MITCHELL, J., concurs; BELL, P.J., dissents.